IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| RICHARD D. ELLIOTT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-3183 |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION

RICHARD MILLS, United States District Judge:

Plaintiff Richard D. Elliot filed a claim for disability insurance benefits under Sections 216(I) and 223 of the Social Security Act and now seeks judicial review under 42 U.S.C. § 405(g) for the denial of his claim at the administrative level.

Pending are the Plaintiff's motion for summary judgment and Defendant's motion for summary affirmance.

I. BACKGROUND

At the time of his alleged onset date, the Plaintiff was 44-years old. He has a 10th grade education and has a combination of medical problems including right ankle bone fusion and infection, hernia repair surgery, insomnia, right hip pain, right

1

knee pain, neck pain, generalized pain and fatigue. He also has depression and anxiety.

The Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in 2013, alleging disability beginning in July 2013. After his applications were denied initially and on reconsideration, the Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The Plaintiff appeared with counsel and testified at the hearing in July 2016 before ALJ Stephan Bell.

In August 2016, the ALJ issued a Decision finding that Plaintiff had the severe impairments of major depressive disorder; post-surgical complete ankylosis (fusion) in neutral position of the right ankle with extensive arthritic changes; right shoulder impingement; and cervical osteoarthritis. The ALJ found that none of the Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment. The ALJ found that Plaintiff had the residual functional capacity to perform a reduced range of sedentary work and could perform a significant number of jobs in the national economy and was thus not disabled.

In June 2017, the Appeals Council declined review, making the ALJ's Decision the final decision for purposes of judicial review. Pursuant to 42 U.S.C. § 405(g), the Plaintiff seeks judicial review of the ALJ's decision.

On appeal, the Plaintiff contends the ALJ failed to give controlling weight to the opinion of his treating physician, Dr. Jonathan L. Wilford. Moreover, the ALJ failed to give controlling weight to his treating psychiatrist, Dr. Erin Humphrey, D.O. The Plaintiff also contends the ALJ's residual functional capacity assessment is not supported by substantial evidence. The Commissioner claims appropriate weight was given to the medical opinions and the ALJ's residual functional capacity determination was reasonable and supported by substantial evidence.

## II. STANDARD OF REVIEW

When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. *See Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted). Although the task of a court is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." *Id*. at 856-57. The ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every

3

piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted).

III. DISCUSSION

ALJ's evaluation of medical opinions

(1)

The Plaintiff alleges the ALJ failed to give controlling weight to the opinion of Dr. Wilford. While treating physicians are "usually entitled to controlling weight, *see* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p,[1] an ALJ may discredit the opinion if it is inconsistent with the record." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). An ALJ must provide "good reasons" for discounting the opinion of a treating physician. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). When not entitled to controlling weight, an ALJ assigns a medical opinion appropriate weight after considering relevant factors, such as whether the opinion was supported by evidence, whether the opinion was consistent with the record as a whole, and the specifics of the treating relationship. *See* 20 C.F.R. § 404.1527(c).

After crushing his foot in bad car accident in 1998, the Plaintiff had six surgeries. He was seen at the Mayo Clinic in 2001 for a crushed tailor joint. The

---

[1] The treating-physician rule was eliminated for claims filed after March 27, 2017, *see* 20 C.F.R. § 404.1520c (2017), but still applies to the Plaintiff's claim.

4

Plaintiff's pain is aggravated by weight bearing and interferes with walking and daily activities. A CT scan on July 15, 2014 documents problems with the ankle which include a Varus deformity, a complex scar, extensive arthritis with two screws across the medial malleolus, a 6.5 screw across the subtalar joint, a possible non-union and likely infection.

The pain clinic put the Plaintiff in counseling to deal with the mental health consequences of his chronic pain. In October 2015, he was diagnosed with osteopenia in x-rays at the pain clinic. The Plaintiff wears a prosthetic boot with a foot lift and AFO brace.

The state agency examining doctor confirmed that because of injuries and infections to the Plaintiff's right ankle, his ankle was completely ankylosed. The doctor noted this was painful most of the time. The examining doctor further noted that Plaintiff complained of some pain in the right hip and right knee, which the Plaintiff believed was related to his right ankle handicap.

Dr. Wilford has treated the Plaintiff since 2014 as his primary care physician. He found that Plaintiff could lift less than 10 pounds occasionally and less than 10 pounds frequently. The Plaintiff can stand and walk less than 2 of 8 hours and sit less than 2 of 8 hours. Dr. Wilford opined Plaintiff can sit 20 minutes before needing to change positions, stand 20 minutes before needing to change positions and will

5

need to lie down six times a day because of his osteomyelitis, ankle fusion and failed ankle surgeries. He can only occasionally reach and push and pull due to balance issues from the failed ankle fusion and chronic ankle pain. He further opined that Plaintiff would miss more than four days of work per month, be off task 25% of the time and would need more than six breaks of ten to fifteen minutes due to pain/paresthesia, numbness.

The vocational expert opined that an individual with such limitations could not work.

The ALJ gave the treating physician's opinions little weight, stating "Dr. Wilford's opinions stand alone with limitations that were not mentioned in his records of treatment and are not supported by objective testing or reasoning which would indicate why the claimant's functioning need be so restricted. Additionally, Dr. Wilford's pattern of treatment of the claimant was generally conservative without escalating modalities and his physical examinations of the claimant do not support the opined limitations." TR 29. The ALJ had earlier noted that Dr. Wilford's examinations tended to show that Plaintiff walked with a limp but were mostly unremarkable otherwise. In September 2014, Dr. Wilford noted a "limping gait on the right" but "no joint instability, normal muscle strength and tone, intact sensation, normal extremity motor examination, and no other noted musculoskeletal or neurological deficits." TR 25.

The Plaintiff claims this conclusion is not supported by the evidence, as he has had six surgeries and been to Mayo Clinic. He has a chronic problem that is irreparable and the only course of treatment available to him is pain management which he has consistently pursued as his records show. The Plaintiff testified the only treatment to which he could escalate was amputation. The Plaintiff contends the ALJ erroneously substituted her own judgment for a treating physician's opinion, without relying on other medical evidence or authority in the record.

In referencing what she described as conservative treatment, the ALJ's Decision notes "the claimant's treatment for his severe physical impairments during the alleged period of disability has consisted of essentially only physical therapy and the record does not reflect escalating treatment modalities, such as increased frequency of treatment, epidural injections, medial branch blocks, use of a transcutaneous electrical nerve stimulation ("TENS") unit, walker usage, wheelchair usage, recurrent emergency room visits, inpatient hospitalization, intensive specialist care, or surgery to alleviate the claimant's alleged symptoms, which suggests the claimant's symptoms are not as severe as alleged or that the conservative treatment has been relatively effective at controlling his symptoms." TR 27.

The Commissioner notes the ALJ's reference to the nature of treatment is relevant information that an ALJ may consider when determining whether a medical

7

source statement is consistent with the evidence. *See* SSR 96-2p (ALJ may consider "any treatment provided to determine whether there is an inconsistency between this evidence and medical opinions about such issues as diagnosis, prognosis . . . or functional effects."). Additionally, the Plaintiff does not cite to any medical record in support of his assertion that no further treatment options are available aside from amputation. He relies only on his hearing testimony.

The ALJ noted that "the opinions of Dr. Wilford consist[s] primarily of a standardized, check-the-box form in which he failed to provide supporting reasoning or clinical findings, which renders his opinions less persuasive." TR 29. The Plaintiff states it is unclear if the ALJ is referring to Dr. Wilford's medical source statement specifically or his medical records as a whole. If she is referring specifically to the medical source statement, the Plaintiff notes Dr. Wilford wrote that Plaintiff would be limited because of his "history of osteomyelitis, history of ankle fusion and other failed ankle surgeries." TR 852. The same reasons are listed for Plaintiff's difficulty with postural activities. Moreover, Dr. Wilford supports his findings as to the Plaintiff's manipulative functions by citing "secondary balance issues from failed ankle fusion and chronic ankle pain, reaching/pushing/pulling would be difficult." TR 853.

The Commissioner states that, as previously noted, the ALJ explained why the records related to the Plaintiff's ankle impairment did not support Dr. Wilford's

extreme limitations. While Dr. Wilford listed a diagnosis in support of his expressed limitations, the Commissioner claims he did not identify any supporting medical findings, which the ALJ may reasonably determine, pursuant to 20 C.F.R. § 404.1527(c)(3), renders the opinion less persuasive.

The Plaintiff asserts these limitations are supported by the Plaintiff's testimony at the hearing as well as the objective medical evidence. The Commissioner contends the ALJ gave appropriate reasons, based on the evidence, for discounting Dr. Wilford's opinion.

Although the ALJ perhaps could have done more to explain her reasons for discounting Dr. Wilford's opinion, she did note the pattern of conservative treatment and explained why she did not find some of the Plaintiff's subjective allegations persuasive. She also noted that certain opinions were not supported by objective testing and found that the entire medical record did not support Dr. Wilford's extreme limitations. This is a sufficient basis for discounting a treating physician's opinion.

(2)

The Plaintiff also alleges the ALJ failed to give controlling weight to treating psychiatrist Dr. Humphrey. A November 12, 2015 office note states: "Richard continues to express his frustration over feeling as if his concerns aren't being heard

regarding his foot. He feels as if providers 'blow him off' because he is on public aid. He reports poor energy and impaired concentration. He is waiting to see Dr. Henzel. Feels helpless and hopeless regarding his situation." TR 518.

The Plaintiff began treating with Dr. Humphrey on June 25, 2014. The pain management counselor, Bridget Ormond, referred him to Dr. Humphrey. He reported that ever since his foot and ankle injury he had not been able to work and felt overwhelmed. He was homeless and sleeping on a sofa. Dr. Humphrey diagnosed him at that time with Adjustment Disorder with anxious and depressed mood.

Dr. Humphrey assessed the Plaintiff with Marked Impairments in the ability to interact with the public, supervisors and coworkers. She also assessed a Marked Impairment in the ability to respond appropriately to usual work situations and to changes in a routine work setting. Dr. Humphrey supported her assessment by stating: "Patient displays significant mood lability and anger outbursts to the point he has threatened physical harm." TR 857-58.

The Plaintiff asserts it is significant that Dr. Humphrey independently opines that Plaintiff would miss more than four days of work per month and be off task more than 25% of the time—both of which were identified as rendering the Plaintiff unemployable by the vocational expert. She also opined that Plaintiff would need

multiple unscheduled breaks of 15 minutes during the day due to anxiety, panic attacks and anger/irritability. The Plaintiff testified about his anger issues at the hearing and these are referenced in his medical records.

The Plaintiff claims that although the record supports Dr. Humphrey's conclusions, the ALJ determined the severity is not supported by the medical records and only gave her medical source statement moderate weight. The ALJ stated, "The objective medical evidence and the claimant's mental health treatment do reflect that the claimant has some difficulties with social interactions and may have some problems with greater than simple tasks that would reduce his ability to perform work activities but does not reflect a significant loss of abstraction or intellectual ability, or an inability to learn new information, remember information that was known sometime in the past, interact with verbal and nonverbal communication, control his movements, or control his behavior, such that further limitations beyond those in the determined residual functional capacity would be appropriate." TR 26. The ALJ further explained that "Dr. Humphrey's pattern of treatment of the claimant was generally conservative without escalating modalities." TR 29. The Decision had earlier noted that Plaintiff had "not received escalating treatment modalities for the alleged mental symptoms, such as increased frequency of treatment, individual therapy, group therapy, intensive psychiatric care, involuntary temporary holds,

recurrent emergency room visits, lengthy inpatient hospitalizations, or relinquishment of guardianship rights." TR 27.

The ALJ also found that Dr. Humphrey's "mental status examinations of the claimant do not support the opined limitations. Dr. Humphrey's treating notes are generally brief with only minimally supportive mental status examinations and do not reflect the degree of problems interacting with others or sustaining work as reflected in her opinions." TR 29. In earlier discussing the Plaintiff's mental status examinations, the ALJ found that Dr. Humphrey's records showed that Plaintiff "routinely demonstrated frustrated or anxious affect, circumstantial thought processes, and some reduced insight but had no noted indications of significant abnormalities in attention, memory, orientation, thought, content, appearance, judgment, psychomotor activity, speech, concentration, recall, cognitive functioning, auditory hallucinations, visual hallucinations, suicidal ideation, or homicidal ideation." TR 26. The ALJ found that the record showed no more than moderate difficulties in social functioning and with regard to concentration, persistence and pace, determined that the evidence was inconsistent with Dr. Humphrey's opinion that Plaintiffs had severe limitations in social interactions and attention/concentration. The ALJ thus discounted her opinion.

The Court concludes that the ALJ adequately discussed why the evidence as a whole was inconsistent with Dr. Humphrey's opinion as to the Plaintiff's

limitations. Specifically, the ALJ noted the treatment was generally conservative and did not escalate. Moreover, Dr. Humphrey's treating notes do not reflect the degree of problems that are reflected in her opinions. The Court finds that the evidence reasonably supports the ALJ's decision.

ALJ's residual functional capacity assessment

"In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-8p.

The ALJ found that Plaintiff could perform a reduced range of sedentary work. The Commissioner notes that determination is more limiting than the opinions of the state agency doctors, who opined that Plaintiff could perform light work and had no severe mental impairments.

The Commissioner notes that the ALJ's residual functional capacity is consistent with the findings and opinions of consultative examiner, Joseph J. Kozma, M.D., and psychological consultative examiner Frank Froman, Ed.D. The ALJ noted that she gave "considerable weight" to the opinions of Dr. Kozma. In February

2014, Dr. Kozma noted that Plaintiff has a "right ankle that is . . . painful most of the time" and which "has no effective range of motion." TR 420. Dr. Kozma also noted that Plaintiff has "pain in right hip, intermittently of mild to moderate intensity." *Id.* Dr. Kozma also observed that Plaintiff walked with a mild limp but would have no difficulty using his hands and fingers.

Dr. Froman opined that Plaintiff could perform one or two step tasks and is "able to relate adequately to co-workers and supervisors," despite having a personality which makes him feel that "my way is the right way." TR 414. The ALJ gave Dr. Froman's opinion "considerable but not full weight," finding it was "consistent with the record as a whole, particularly . . . the claimant's minimally supportive mental status examinations and pattern of treatment." TR 28.

The Plaintiff alleges the ALJ did not consider the Plaintiff's pain when determining residual functional capacity.

The Plaintiff testified that he has to prop his leg up due to the pain. He does this four times a day for 30 to 45 minutes, as instructed by Dr. Wilford. The Plaintiff also testified he has difficulty sleeping due to his pain. As a result, he often needs to nap during the day. The Plaintiff also reported poor concentration due to pain.

The Plaintiff also testified that the antidepressants he takes affect his ability to concentrate, making him "feel out of it" resulting in it taking longer to compute

14

information. The Plaintiff alleges the ALJ did not address the impact of Plaintiff's medications on his ability to concentrate and think clearly.

The ALJ's Decision does at various points reference the Plaintiff's subjective allegations, including his pain complaints and alleged difficulty concentrating and determined that they were inconsistent with the rest of the record. The ALJ found that "objective medical evidence clearly supports that the claimant has right ankle and shoulder pain . . . [but] does not support the claimant's subjective allegations regarding the effects of those impairments on his functioning and do not support limitations beyond those in the determined residual functional capacity." TR 25. The Commissioner alleges the ALJ's subjective symptom analysis is thorough and supported by substantial evidence, including the objective medical evidence, Plaintiff's prior work record, his activities of daily living, and his treatment history. Moreover, the Plaintiff does not specifically challenge any aspect of the ALJ's subjective symptom analysis.

As for the Plaintiff's argument concerning medication side effects, the Commissioner notes that Plaintiff relies only on his own testimony and does not cite any medical records. While an ALJ should consider any side effects of medication, *see* 20 C.F.R. § 404.1529(c)(3)(iv), (v), he need not accept allegations that lack objective medical support. *See Labonne v. Astrue*, 341 F. App'x 220, 225-26 (7th Cir. 2009) ("Aside from Labonne's testimony that her medications caused dizziness

and drowsiness, the record contains virtually no evidence that she complained of her medications causing significant side effects.").

The Court notes that the ALJ provided reasons for discounting the opinions of the treating doctors. Moreover, she explained why she did not credit some of the Plaintiff's subjective analysis. Because the residual functional capacity finding is generally consistent with the opinions of Dr. Kozma and Dr. Froman, the Court finds the ALJ's residual functional capacity was reasonable and supported by substantial evidence.

The ALJ must consider an applicant's medical problems in combination with one another. *See Yurt*, 758 F.3d at 860. The Plaintiff contends that, if the ALJ had evaluated the severe and non-severe problems, including pain, napping and medication side effects, she would have concluded that Plaintiff is unable to maintain competitive employment. The ALJ must acknowledge having considered the aggregate effect and discuss each symptom. *See Lott v. Colvin*, 541 F. App'x 702, 706 (7th Cir. 2013). The ALJ's Decision addresses each of the Plaintiff's medical problems and further provides that she examined the combination of impairments at step 2, considered the severe and non-severe problems at step 4 and concluded that Petitioner is not under a disability. Accordingly, the Court concludes that the ALJ accounted for the aggregate of the Petitioner's symptoms.

Based on the foregoing, the Court will allow the Commissioner's motion for summary judgment and deny the Plaintiff's motion.

Ergo, the Motion of Defendant Commissioner of Social Security for Summary Judgment [d/e 13] is GRANTED.

The Commissioner's denial of benefits is Affirmed.

The Motion of Plaintiff Richard D. Elliott for Summary Judgment [d/e 10] is DENIED.

Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk will substitute Andrew Saul, Commissioner of the Social Security Administration, as the proper Defendant.

The Clerk will enter Judgment and terminate this case.

ENTER: September 27, 2019

FOR THE COURT:

/s/ *Richard Mills*

Richard Mills
United States District Judge